# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:10-cr-00067-MR-WCM-2

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| JOSEPH ABDUL HENDRIX, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on remand from the Court of Appeals for the Fourth Circuit for further consideration of the Defendant's "Motion for Reconsideration of Order Denying Compassionate Release Based in Part on COVID-19" [Doc. 92]; the Government's Response to Defendant's Motion to Reconsider [Doc. 107]; and the Government's Motion to Seal Exhibit [Doc. 109].

**I.   BACKGROUND**

In November 2011, the Defendant Joseph Abdul Hendrix was convicted of one count of Hobbs Act robbery and one count of possession of a firearm by a convicted felon and was sentenced to a total term of 170

months' imprisonment. [Doc. 52]. The Defendant is currently housed at USP Terre Haute, and his projected release date is December 17, 2022.[1]

The Defendant filed a motion seeking compassionate release on April 20, 2020, in light of the ongoing COVID-19 pandemic. [Doc. 89]. The Court denied the Defendant's motion due to his failure to exhaust his administrative remedies. [Doc. 90]. On June 18, 2020, the Defendant filed a motion to reconsider his compassionate release motion wherein he claimed that the Warden of his institution had denied his request. [Doc. 92]. The Court construed this motion as a request to move the Defendant to a halfway house or to home confinement, which the Court denied. [Doc. 95]. The Defendant appealed. [Doc. 99]. The Fourth Circuit Court of Appeals remanded the matter back to this Court to address the Defendant's claims of exhaustion and to address the merits of his request for immediate release. [Doc. 105 at 2].

---

[1] See https://www.bop.gov/inmateloc/ (last visited March 8, 2021).

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden on May 20, 2020. [Doc. 92-1 at 1-2]. Although the Warden regarded the Defendant's request as one for home detention rather than compassionate release when rejecting it, the Government does not dispute that the Defendant sufficiently cited the relevant statute and requested compassionate release. [Id. at 2-3]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

4

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant asserts that he has angina, and that this condition places him at an increased risk of serious illness or death if he were exposed to the coronavirus. The Centers for Disease Control and Prevention (CDC) has identified certain *serious* heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension, that may increase the risk for severe illness from COVID-19. Angina, however, is not one of those serious conditions.[2] In fact, angina is not a disease at all—it is simply chest pain that may be a symptom of an underlying heart problem.[3] The Defendant complained of chest pain in 2016. In response, the BOP medical staff ordered additional tests to determine if he suffered from coronary artery disease. [Doc. 92-1 at 7]. By 2020, the Defendant's symptoms had resolved, and his doctors attributed the chest pains to the musculature of his chest wall, not heart disease. [See Doc. 108 at 35, 37, 43, 44, 45]. In short, the Defendant does not appear to have a serious heart condition and therefore is no more susceptible to the effects of COVID-19 than the average person is.

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 8, 2021).

[3] See https://www.heart.org/en/health-topics/heart-attack/angina-chest-pain (last visited Mar. 8, 2021).

6

Further, as the Government notes, the Defendant tested positive for the virus in December 2020, experienced no significant symptoms, and has fully recovered. [Doc. 108 at 16-17, 50, 83]. Current scientific evidence suggests that reinfection is uncommon in the 90 days after initial infection.[4] Additionally, BOP is in process of vaccinating its inmate population, and the Defendant's antibodies against the virus likely will protect him until he receives a vaccine. Because the Defendant has already contracted the virus and recovered without complication, and because he is likely to be vaccinated in the near future, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release.

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

---

[4] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last visited Mar. 8, 2021).

7

Here, the Defendant's crime was extremely serious. He robbed a convenience store at gunpoint, placing a cashier in fear of his life over $117 and a bottle of Wild Irish Rose. [Doc. 39: PSR at 3]. Additionally, the Defendant has an extensive criminal history, including convictions for larceny, common law robbery, carrying a concealed weapon, possession of a firearm by a convicted felon, assault on a law enforcement officer, assault and battery, assault inflicting serious bodily injury, assault on a female, resisting arrest, and both the sale and possession of cocaine. [Id. at 7-14]. At the time of sentencing for the present conviction, the Defendant had 29 criminal history points, more than double that which was required to reach category VI. [Id. at 15].

Additionally, the Defendant has a significant disciplinary record in prison, having received citations for fighting with other inmates, possessing improvised weapons, and possessing drugs. [Doc. 107-1: Inmate Discipline Data]. While the Defendant has completed some classes and drug treatment [see Doc. 92-1 at 32-36], such positive actions have already been taken into account by BOP in calculating his "good time."

For all these reasons, the Court concludes that the need for the sentence to reflect the true extent and seriousness of the Defendant's

offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes militate against a sentence reduction in this case.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Reconsideration of the Order denying his request for compassionate release is denied.

### B. Motion to Seal

The Government moves the Court for leave to file under permanent seal the BOP medical records [Doc. 108] filed in support of its Response to the Defendant's Motion for Reconsideration. [Doc. 109].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity

9

to object to the Government's motion. The Government filed its motion on February 19, 2021, and such motion has been accessible to the public through the Court's electronic case filing system since that time. Further, the Government has demonstrated that the subject medical records contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Reconsideration of Order Denying Compassionate Release Based in Part on COVID-19" [Doc. 92] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal Exhibit [Doc. 109] is **GRANTED**, and the medical records submitted in support of the Government's Response [Doc. 108] shall be filed under seal and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: April 2, 2021

*[signature]*

Martin Reidinger
Chief United States District Judge

11